IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSE GARCIA-TORRES, | : | |
| Plaintiff, | : | CIVIL NO. 4:07-CV-0908 |
| v. | : | (Judge Jones) |
| UNITED STATES OF AMERICA, | : | |
| Defendant | : | |

### MEMORANDUM

February 2, 2009

On May 17, 2007, Plaintiff Jose Garcia-Torres ("Plaintiff" or "Garcia-Torres"), a former inmate, initiated this *pro se* civil rights action by filing a Complaint raising claims under 28 U.S.C. § 1331 and the Federal Tort Claims Act ("FTCA").[1]

Presently before the Court is a Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 filed on behalf of Defendant the United States of America ("Defendant"). (Doc. 34.) For the reasons set forth below, the Motion will be granted.

---

[1] Although Plaintiff did not state in the Complaint that he is pursuing his claims under the FTCA, the Court clarified in its May 29, 2008 Memorandum that it construed his claims as having been brought under the FTCA. (*See* Doc. 32 at 4.)

1

I.  **BACKGROUND**

At the time of filing, Plaintiff was confined at the United States Penitentiary - Canaan ("USP-Canaan") in Waymart, Pennsylvania.  In his Complaint, he makes the following allegations:

> As I was walking out of my housing unit at USP Canaan on December 3, 2005, I fell on a large piece of ice.  The walkway was not shovled [*sic*] and therefore there was ice all over the sidewalks.  I laid on the ground for several minutes before I could be helped up and taken to the medical department.  I also have not been getting the proper medical treatment that I should be receiving.  I was told that I would have more x-rays done on my back, but the process has been delayed several times.

(Doc. 1 at 2.)  Plaintiff named Warden Cameron Lindsey and the Federal Bureau of Prisons ("BOP") as Defendants.  Service of the Complaint was directed by Order dated June 18, 2007.  (Doc. 8.)

On August 31, 2007, the United States of America filed a Motion to Substitute itself as a party for Lindsey and the BOP pursuant to the Federal Employees Liability Reform and Tort Compensation Act of 1988 §§ 5, 6, Pub. L. No. 100-694, 102 Stat. 4563 (1988) (codified at 28 U.S.C. § 2679(c), (d)(1)).  (*See* Doc. 13.)  By Order dated September 28, 2007, the Motion was granted, and the United States of America was substituted as a party.  (*See* Doc. 17.)

On October 15, 2007, Defendant filed a Partial Motion to Dismiss. (Doc. 18.) On May 29, 2008, Defendant's Motion was granted, and Plaintiff's medical negligence claim was dismissed. (*See* Doc. 32.) Plaintiff filed a Notice of Appeal, and on November 14, 2008, the United States Court of Appeals for the Third Circuit dismissed Plaintiff's appeal for lack of appellate jurisdiction.[2] (*See* Doc. 43.)

On June 12, 2008, the day before Plaintiff filed his Notice of Appeal, Defendant filed the instant Motion for Summary Judgment. (*See* Doc. 34.) On June 26, 2008, a Brief (Doc. 37) and Statement of Facts (Doc. 38) were filed. On November 17, 2008, after the Third Circuit Court of Appeals issued its Order dismissing Plaintiff's appeal, this Court issued an Order granting Plaintiff an opportunity to file his opposition to Defendant's Motion within fifteen (15) days. (*See* Doc. 44.) He was warned that his failure to do so would result in the Motion being deemed unopposed and addressed on the merits. The time period to submit opposition has long expired, and Plaintiff has failed to oppose the Motion.

---

[2] The Order dismissing the appeal explained that the Third Circuit Court of Appeals lacked appellate jurisdiction because this Court's May 29, 2008 Order did not terminate Garcia-Torres's case as to all claims and all parties, and this Court had not issued an order meeting the requirements of Federal Rule of Civil Procedure 54(c). (*See* Doc. 43.)

## II. STANDARD OF REVIEW

Summary judgment is appropriate if the record establishes "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant meets this burden by pointing to an absence of evidence supporting an essential element as to which the non-moving party will bear the burden of proof at trial. *Id.* at 325. Once the moving party meets its burden, the burden then shifts to the non-moving party to show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e)(2). An issue is "genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find for the non-moving party, and a factual dispute is "material" only if it might affect the outcome of the action under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

In opposing summary judgment, the non-moving party "may not rely merely on allegations or denials in its own pleadings; rather, its response must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The non-moving party "cannot rely on unsupported allegations, but must go beyond pleadings

and provide some evidence that would show that there exists a genuine issue for trial." *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000). Arguments made in briefs "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion." *Jersey Cent. Power & Light Co. v. Twp. of Lacey*, 772 F.2d 1103, 1109-10 (3d Cir. 1985). However, the facts and all reasonable inferences drawn therefrom must be viewed in the light most favorable to the non- moving party. *P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848, 852 (3d Cir. 2006).

Summary judgment should not be granted when there is a disagreement about the facts or the proper inferences that a factfinder could draw from them. *Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir. 1982). Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48.

Plaintiff failed to oppose Defendant's Motion for Summary Judgment, and therefore, the Motion is deemed unopposed. Moreover, because Plaintiff has failed to file a separate statement of material facts controverting the statement filed by Defendant, all material facts set forth in Defendant's Statement of Undisputed

Material Facts (Doc. 38) will be deemed admitted. *See* M.D. Pa. LR 56.1.[3] It should also be noted that Plaintiff did not submit any evidence in response to the evidence submitted by Defendant. Despite these deficiencies, the Court still must analyze the merits of Defendant's Motion to determine whether summary judgment is appropriate. *See Lorenzo v. Griffith*, 12 F.3d 23, 28 (3d Cir. 1993); *Anchorage Assoc. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 174-75 (3d Cir. 1990).

## III. DISCUSSION

### A. Undisputed Facts

Defendant's Statement of Undisputed Facts (Doc. 38) and supporting materials[4] establish the following:

Garcia-Torres arrived at USP-Canaan on August 4, 2005. (Defendant's Statement of Material Facts, Doc. 38 ¶ 1.) On August 19, 2005, he reported the following to BOP medical staff: (1) he was classified as "disabled" on the street; (2)

---

[3] M.D. Pa. LR 56.1 provides, in relevant part, as follows: "All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party."

[4] Defendant submitted the following evidentiary materials: National Climactic Data Center AVP Daily Visual Summary for December 2, 2005 (Ex. A); National Climactic Data Center AVP Daily Visual Summary for December 3, 2005 (Ex. B); Declaration of Anthony Ferraro, a Senior Officer assigned to USP-Canaan who reported to the scene of Plaintiff's fall on December 3, 2005 (Ex. C); Declaration of Fazal Bhatti, M.D., a Clinical Director at USP-Canaan (Ex. D); Plaintiff's Chronological Record of Medical Care at USP-Canaan from August 4, 2005 through December 13, 2007 (Att. 1); and a copy of Plaintiff's Administrative Tort Claim (Ex. E).

he had back surgery in 1994; (3) he was involved in a motor vehicle accident in 1998, which resulted in a coma lasting fifteen days; and (4) as a result of the accident, he sustained ongoing back, wrist, and elbow pain. (*Id.* at ¶ 2.) Medical staff prescribed Naproxen Sodium for Garcia-Torres' pain, to be used as needed. (*Id.* at ¶ 3.)

On August 30, 2005, the Physician/Clinical Director saw Garcia-Torres in the Hypertension Clinic. (*Id.* at ¶ 4.) Garcia-Torres reported active lower back pain, which he attributed to the 1994 surgery and 1998 motor vehicle accident. (*Id.* at ¶ 5.) He reported that he was experiencing pain at a level six on a scale of one to ten. (*Id.* at ¶ 6.) He also reported pain when bending. (*Id.* at ¶ 7.) The Physician/Clinical Director diagnosed Garcia-Torres with chronic back pain and prescribed Tylenol for the condition. (*Id.* at ¶ 8.) Routine comprehensive laboratory testing also was requested. (*Id.* at ¶ 9.)

On December 2 and 3, 2005, the National Climactic Data Center's official weather observation station at the Wilkes-Barre/Scranton International Airport ("AVP") recorded official weather observations for the area in and around Waymart, Pennsylvania, where USP-Canaan is located. (*Id.* at ¶ 10.) AVP records show that, on December 2, 2005, the day before Garcia-Torres slipped and fell at USP-Canaan, the temperature in Waymart ranged from 26.9 degrees to 34.0 degrees Fahrenheit. (*Id.* at

¶ 11.) In addition, light snow was recorded at 1:00 a.m., 2:00 a.m., 10:00 a.m., from 12:00 to 3:00 p.m., and at 6:00 p.m. (*Id.* at ¶ 12.) Snow and ice were recorded at 8:00 p.m. (*Id.* at ¶ 13.) Light snow also was recorded at 10:00 p.m. and 11:00 p.m. (*Id.* at ¶ 14.)

On December 3, 2005, the day Garcia-Torres slipped and fell on ice, AVP records show that the temperature in Waymart ranged from 23.0 degrees to 30.9 degrees Fahrenheit. (*Id.* at ¶ 15.) In addition, light snow was recorded at 12:00 a.m., 1:00 a.m., 1:00 p.m. and 3:00 p.m. (*Id.* at ¶ 16.) At or around 5:00 p.m., the temperature was recorded at 26.9 degrees Fahrenheit. (*Id.* at ¶ 17.)

At approximately 5:20 p.m. on December 3, 2005, Senior Officer Anthony Ferraro, who was working as the evening watch Unit B2 officer, was notified by an inmate that Garcia-Torres had slipped on some ice in front of the Unit and needed assistance. (*Id.* at ¶¶ 18-19.) When Ferraro went outside, he discovered Garcia-Torres lying on the ground on his back in front of Unit B2. (*Id.* ¶ 20.) Ferraro called Health Services for assistance and stayed with Garcia-Torres until medical staff arrived several minutes later. (*Id.* at ¶ 21.)

Upon arrival at the scene, medical staff examined Garcia-Torres and then transported him via medical cart to Health Services for further evaluation. (*Id.* at ¶

22.) At Health Services, medical staff evaluated Garcia-Torres for a complaint of back pain, which he stated was in the left lower lumbar area of his back. (*Id.* at ¶ 23.) Medical staff provided him with minor first aid and Ibuprofen for pain, and instructed him to rest and apply warm compresses. (*Id.* at ¶¶ 24, 25.) Medical staff then provided Garcia-Torres with a cane to assist with ambulation as needed and instructed him to return to Health Services for any worsening of his condition. (*Id.* at ¶ 26.)

Three days later, on December 6, 2005, medical staff saw Garcia-Torres for complaints of back pain. (*Id.* at ¶ 27.) Following examination, medical staff noted no swelling or deformity and that Garcia-Torres was able to undress without difficulty. (*Id.* at ¶ 28.) Garcia-Torres complained of pain over the lumbar/sacral area. (*Id.* at ¶ 29.) Medical staff advised him to apply warm compresses, perform stretching exercises as tolerated, and continue with the previously prescribed anti-inflammatory pain medication. (*Id.* at ¶ 30.) Medical staff also ordered an x-ray of Garcia-Torres' lower back to further evaluate his condition. (*Id.* at ¶ 31.)

On December 14, 2005, Garcia-Torres received an x-ray of his back. (*Id.* at ¶ 32.) The radiology report notes that there was a surgical fusion of the L5-S1 disk space. (*Id.* at ¶ 33.) The x-ray results were reviewed with Diane Sommer, Clinical Director at the Federal Correctional Institution in Otisville, New York, who was on

temporary assignment at USP-Canaan. (*Id.* at ¶ 34.) Dr. Sommer felt that the findings noted on the x-ray were consistent with the old injury from Garcia-Torres' past motor vehicle accident and previous back surgery. (*Id.* at ¶ 35; Bhatti Decl., Doc. 37-3 at 16 ¶ 9; Medical Record, Doc. 37-3 at 43.)

On January 4, 2006, Dr. Sommer saw Garcia-Torres for a follow-up evaluation. (Doc. 38 ¶ 36.) Garcia-Torres complained of "stiffness," having trouble getting up and rolling over, and pain in both legs. (*Id.* at ¶ 37.) Dr. Sommer prescribed an abdominal binder/support and Piroxicam, a longer-acting anti-inflammatory pain medication. (*Id.* at ¶ 38.) Dr. Sommer noted that, in future, a bone scan or CT scan may be considered for further evaluation of bony structures. (*Id.* at ¶ 39.)

On February 17, 2006, during a regularly scheduled Chronic Care clinic visit, Garcia-Torres reported no complaints and received refills of his chronic care medications. (*Id.* at ¶ 40.)

On March 10, 2006, medical staff saw Garcia-Torres for complaints of stomach, back, and heart problems, as well as headaches, which he claimed he had been experiencing for more than a year. (*Id.* at ¶ 41.) He denied having any chest pain at that time. (*See* Medical Record, Doc. 37-3 at 39-40.)

On April 25, 2006, Garcia-Torres reported to Health Services and requested to see the Clinical Director. (Doc. 38 ¶ 43.) He declined to be evaluated by the Physician's Assistant and instead chose to wait to for an appointment with the Clinical Director, Dr. Batti. (*Id.* at ¶ 44.) On May 15, 2006, Garcia-Torres was evaluated at the Chronic Care clinic by Dr. Bhatti. (*Id.* at ¶ 45.) At that time, he reported, "I still have this back pain and it is real." (Medical Record, Doc. 37-3 at 37.) He rated his pain as a level four on a scale of one to ten. (*Id.*) Dr. Bhatti examined him and noted no significant neurological deficits and no wasting or muscular atrophy. (Doc. 38 ¶ 48.) In addition, Garcia-Torres' gait appeared stable with good lower extremity reflexes. (*Id.* at ¶ 49.) Wrist and spine x-rays were ordered to further evaluated his complaints, a "light duty" work pass was authorized, and Tylenol was prescribed as needed for pain. (*Id.* at ¶ 50.) A May 17, 2006 x-ray of Garcia-Torres' back revealed degenerative and post-surgical changes of the L spine, but no acute radiographic abnormalities. (*Id.* at ¶ 51.)

On August 4, 2006, Garcia-Torres reported to the Chronic Care clinic. (*Id.* at ¶ 52.) During that visit, he made no complaints and reported that he was taking his medication as advised. (*Id.*)

During an October 31, 2006 Chronic Care clinic evaluation, Garcia-Torres complained of back pain with standing. (*Id.* at ¶ 53.) He also reported that he was using his back support at work and that it helped him. (*Id.*) A musculoskeletal examination showed some paraspinous spasm and tenderness, but no deformity or atrophy of the extremities. (*Id.* at ¶ 54.) There were no focal neurological deficits noted, and his gait was normal. (*Id.* at ¶ 55.) Medical staff ordered an MRI of Garcia-Torres' spine to further evaluate his chronic lower back concerns. (*Id.* at ¶ 56.)

On February 20, 2007, Garcia-Torres had a routine appointment at the Chronic Care clinic, during which he voiced no complaints, and all of his physical finding were within normal limits. (*Id.* at ¶ 57.) His chronic care medications were renewed, and he received a prescription for Ibuprofen to be taken twice daily as needed for pain. (*Id.* at ¶ 58.)

On February 21, 2007, Garcia-Torres had an MRI of the Lumbar spine. (*Id.* at ¶ 59.) The MRI was a limited study because of the presence of metallic foreign body, artifacts from the fusion of Garcia-Torres' lower lumbar spine. (*Id.* at ¶ 60.) Of the areas identified, there was no evidence of significant disc protrusions. (*Id.* at ¶ 61) Degenerative disc disease was noted in the lower thoracic and upper lumbar area. (*Id.*

at ¶ 62.) However, the visualized portion of the distal spinal cord was unremarkable with no evidence of spinal stenosis. (*Id.*)

During a March 14, 2007 routine visit to the Chronic Care clinic, Garcia-Torres reported that his back pain was "fine," and his chief complaint was heartburn. (Medical Record, Doc. 37-3 at 29; Bhatti Decl., Doc. 37-3 at 21 ¶ 23.) During a routine visit to the Chronic Care clinic on September 19, 2007, Garcia-Torres reported feeling well and made no complaints of any significant pain. (Bhatti Decl., Doc. 37-3 at 21, ¶ 24.) On November 16, 2007, Garcia-Torres was seen during sick call for his request for a renewal of his prescription for Zantac. (*Id.* at ¶ 25.) He denied having any pain at that time. (*Id.*) On December 13, 2007, Garcia-Torres offered no complaints during his visit to the Chronic Care clinic. (*Id.* at ¶ 26.) He stated "I feel good" and reported that he was more active and watching his diet. (*Id.*)

On September 18, 2006, Garcia-Torres filed an administrative tort claim with the BOP's Northeast Regional Office seeking $100,000 in compensation for a personal injury that he allegedly suffered when he slipped and fell on the ice at USP-Canaan on December 3, 2005. (Doc. 38 ¶ 64; Administrative Tort Claim, Doc. 37-3 at 55.)

**B.     Analysis**

The Federal Tort claims Act confers subject matter jurisdiction on district courts over negligence actions against the United States. It provides, in relevant part:

> . . . the district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). It is well-settled that, in considering a FTCA action, a federal district court must apply the law of the state in which the alleged tortious conduct occurred. *Id.*; *Turner v. Miller*, 679 F. Supp. 441, 443 (M.D. Pa. 1987). To establish a cause of action for negligence in Pennsylvania, a plaintiff must prove the following elements: (1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual damages. *N.W. Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 139 (3d Cir. 2005); *Pittsburgh Nat'l Bank v. Perr*, 637 A.2d 334, 336 (Pa. Super. Ct. 1994).

Defendants are entitled to summary judgment because Garcia-Torres has not demonstrated that any employee of the United States had a duty to remove ice on the day of his slip and fall. The government's duty of care to federal prisoners is one of

ordinary diligence. *See Turner*, 679 F. Supp. at 443 (citing 18 U.S.C. § 4042; *Hossic v. United States*, 682 F. Supp. 23 (M.D. Pa. 1987).

"The standard of care a possessor of land owes to one who enters upon the land depends upon whether the person entering is a trespasser, licensee, or invitee." *Carrender v. Fitterer*, 469 A.2d 120, 123 (Pa. 1983) (citing *Davies v. McDowell Nat'l Bank*, 180 A.2d 21 (Pa. 1962); Restatement (Second) of Torts §§ 328-343B (1965)). "Pennsylvania courts have found that 'an inmate's status is most closely to that of an invitee under common law.'" *Yudenko v. Guarini*, Civil No. 06-4161, 2008 WL 4055826, at *11 n.8 (E.D. Pa. 2008) (quoting *Graf v. County of Northhampton*, 654 A.2d 131, 133-34 (Pa. Commw. Ct. 1995)). "Possessors of land owe a duty to protect invitees from foreseeable harm." *Carrender*, 469 A.2d at 123 (citing Restatement, *supra*, §§ 341A, 343, 343A). The *Carrender* Court further stated:

> With respect to conditions on the land which are known to or discoverable by the possessor, the possessor is subject to liability only if he:
>
> '(a) knows or by the exercise of reasonable care would discover the condition and should realize that it involves an unreasonable risk of harm to such invitee, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger.'

*Id.* (quoting Restatement (Second) of Torts § 343). However, "'the law of Pennsylvania does not impose liability if it is reasonable for the possessor to believe that the dangerous condition would be obvious to and discovered by the invitee.'" *Atkins v. Urban Redev. Auth. of Pittsburgh*, 414 A.2d 100, 104 (Pa. 1980) (quoting *Palenscar v. Michael J. Bobb, Inc.*, 266 A.2d 478, 480 (Pa. 1970)).

The "hills and ridges" doctrine protects a possessor of land from liability for generally slippery conditions resulting from ice and snow where the owner has not permitted the ice and snow to unreasonably accumulate in ridges or elevations. *Morin v. Traveler's Rest Motel*, 704 A.2d 1085, 1087 (Pa. Super. Ct. 1997) (citing *Harmotta v. Bender*, 601 A.2d 837 (Pa. Super. Ct. 1992)). "[A] prerequisite to the application of the 'hills and ridges' doctrine is a finding of generally slippery conditions as opposed to isolated icy patches." *Id.* (citing *Harmotta*, 601 A.2d at 837). In this case, Defendants submitted AVP records showing that light snow or snow and ice fell during the day before and day of Garcia-Torres's fall in Waymart, where USP-Canaan is located. (*See* AVP Daily Visual Summaries, Doc. 37-3 at 3-9.) The AVP records also show that on December 2, 2005, the temperature hovered just above to just below freezing. (*See id.*) Therefore, it is reasonable to infer that the snow on the ground melted and re-froze throughout the day. On the day of Plaintiff's fall, temperatures

registered below freezing. (*See id.*) Accordingly, it appears that a generally slippery condition existed at the time of Plaintiff's fall, and therefore, the "hills and ridges" doctrine applies.

To recover for a fall on an ice or snow covered surface in cases where the "hills and ridges" doctrine applies, a plaintiff must prove:

> (1) that snow and ice had accumulated on the sidewalk in ridges or elevations of such size and character as to unreasonably obstruct travel and constitute a danger to pedestrians traveling thereon;
>
> (2) that the property owner had notice, either actual or constructive, of the existence of such condition;
>
> (3) that it was the dangerous accumulation of snow and ice which caused the plaintiff to fall.

*Morin*, 704 A.2d at 1088 (citing *Rinaldi v. Levine*, 176 A.2d 623, 625 (Pa. 1962)). In this case, Garcia-Torres has not submitted any evidence to show that snow and/or ice had accumulated on the sidewalk in front of his unit at USP-Canaan in "hills and ridges" such that it would unreasonably obstruct travel. Because there is no proof of this crucial element, Defendant cannot be held liable for the existence of ice and snow on the sidewalks at USP-Canaan on December 3, 2005. Moreover, because Defendant cannot be held liable for the generally slippery conditions, it also cannot be held liable

for any injuries Garcia-Torres alleges he suffered as a result of the fall. Accordingly, Defendant is entitled to summary judgment.

Moreover, even if Garcia-Torres had presented evidence to support this element, he failed to submit any evidence regarding injuries he suffered as a result of the fall. The undisputed factual record demonstrates that Garcia-Torres suffered from chronic back pain before the fall; there was little change in the care he received for his chronic back pain after the fall; x-rays and an MRI revealed only his previous injuries; and there is no evidence of any long-term effects from the fall. (See Doc. 38 ¶¶ 1-9, 31- 35, 39, 50-51, 59-62.) Thus, even assuming arguendo that Garcia-Torres met the requirements of the "hills and ridges" doctrine, he has not presented any evidence of actual damages, and Defendant would be entitled to summary judgment for his failure to meet this required element of his claim.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. 34) will be granted. An appropriate Order shall enter on today's date.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOSE GARCIA-TORRES, :
:
    Plaintiff, : CIVIL NO. 4:07-CV-0908
:
v. : (Judge Jones)
:
UNITED STATES OF AMERICA, :
:
    Defendant :

## ORDER

February 2, 2009

In accordance with the Memorandum issued on today's date, **IT IS HEREBY ORDERED THAT:**

1. Defendant's Motion for Summary Judgment (Doc. 34) is **GRANTED**.

2. **JUDGMENT** is hereby entered in favor of Defendant.

3. The Clerk of Court is directed to **CLOSE** this case.

                                                    John E. Jones III
                                                  United States District Judge

1